UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. 2:24-cv-09193-JGB-KES                                              Date: January 21, 2025

Title:   SUSAN ANDREA CAVADAS v. WARDEN RICOLCOL

---

PRESENT:

THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE

| Jazmin Dorado | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PETITIONER: | ATTORNEYS PRESENT FOR RESPONDENT: |
|---|---|
| None Present | None Present |

---

PROCEEDINGS (IN CHAMBERS):     Order Requiring Petitioner to Respond to the Motion to Dismiss (Dkt. 14)

I.   **BACKGROUND**

  A.   **Initial Petition**

On October 16, 2024, Susan Andrea Cavadas ("Petitioner") constructively[1] filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. ("Petition" at Dkt. 1.) Petitioner is an inmate in the custody of the Federal Bureau of Prisons ("BOP") housed at FCI Victorville. (Id. at 1.) According to BOP public records, her current release date is November 22, 2025. See BOP Inmate Locator, https://www.bop.gov/inmateloc/.

The Petition alleged that on January 18, 2024, Petitioner was sentenced to 62 months in

---

[1] "Under the mailbox rule, a prisoner's pro se habeas petition is deemed filed when he hands it over to prison authorities for mailing to the relevant court." Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010) (citation omitted); see also Houston v. Lack, 487 U.S. 266, 268 (1988). A court generally deems a habeas petition filed on the day it is signed, because it assumes the petitioner turned the petition over to prison authorities for mailing that day. See Butler v. Long, 752 F.3d 1177, 1178 n.1 (9th Cir. 2014); Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-09193-JGB-KES                                                     Date: January 21, 2025
                                                                                                            Page 2

custody to be followed by 3 years of supervised release. (Pet. at 1.)[2]  It further contended that she should have been released on August 8, 2024, if the BOP had properly awarded her jail credit, First Step Act ("FSA") earned time credits ("ETCs"), good time credits ("GTCs"), and Second Chance Act ("SCA") credits. (Id.)

The Petition attached a BOP form entitled, "FSA Time Credit Assessment" and dated October 10, 2024. (Id. at 5-6.)  The form lists Petitioner's projected release date as November 22, 2025, but it also lists an "FSA Projected Release Date" of November 12, 2025 and an "SCA Conditional Placement Date" of August 4, 2024. (Id.)  The form also states, "SCA days are not guaranteed and require an individualized assessment! … This date is subject to change based on the required five-factor review under 18 USC sec. 3621(b)." (Id.)

The Petition appeared to admit that Petitioner had not exhausted her administrative remedies.  It asserted that "administrative remedies [are] not available and therefore [are] futile. … Ross [v. Blake, 578 U.S. 32 (2016)] outlined 3 ways that grievance procedures might be 'unavailable' to incarcerated people in practice[;] one is preventing prisoners from pursuing their administrative remedies which is the case here." (Id. at 2.)

### B.   First Amended Petition

The Court dismissed the Petition with leave to amend, finding that Petitioner would need to add more facts explaining how and why she believed the BOP's administrative remedies were unavailable. (Dkt. 5.)

Petitioner constructively filed a First Amended Petition ("FAP" at Dkt. 7) on November 23, 2024.  The FAP alleges that on October 23, 2024—about a week after Petitioner signed the initial Petition and the same day it was received by the Court—Petitioner "asked Counselor Diaz for a BP-8 to begin [her] administrative remedies … but was denied a BP-8. … Counselor Diaz is the gate keeper to the administrative remedies forms, and can only get it from her…. Counselor Unit Team Lujan said I had to get it from her." (Id. at 1-2.)

The Court ordered Respondent to respond to the FAP. (Dkt. 9.)  Respondent has now filed a motion to dismiss the FAP based on Petitioner's failure to exhaust her administrative remedies with the BOP. (Dkt. 14.)

## II.   LEGAL STANDARD

To seek habeas relief under § 2241, "a petitioner must first, as a prudential matter, exhaust his or her available administrative remedies." Singh v. Napolitano, 649 F.3d 899, 900

---

[2] This appears to be consistent with available public records. See United States v. Cavadas, No. 4:21-cr-00184-ALM-AGD(2) (E.D. Tex. Jan. 19, 2024) (criminal judgment showing Petitioner pled guilty to conspiracy to possess with intent to manufacture and distribute 500 grams or more of methamphetamine and sentenced to 62 months).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-09193-JGB-KES                                                                                      Date: January 21, 2025
                                                                                                                                                    Page 3

(9th Cir. 2011). This exhaustion requirement serves several purposes. It "aid[s] judicial review by allowing the appropriate development of a factual record in an expert forum"; it "conserve[s] the court's time because of the possibility that the relief applied for may be granted at the administrative level"; and it "allow[s] the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings." Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983); see also Montes v. Thornburgh, 919 F.2d 531, 537 (9th Cir. 1990) (noting that courts may require exhaustion as a prudential matter where, e.g., "agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision" and "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme").

However, the "exhaustion requirement is subject to waiver in § 2241 cases because it is not a 'jurisdictional prerequisite.'" Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (citation omitted). "[E]xhaustion can be waived if pursuing those [administrative] remedies would be futile." Id. at 1045; see also Green v. Carlson, 884 F.2d 1394, *2 (9th Cir. 1989) (table) (citing United Farm Workers v. Arizona Agricultural Employment Relations Bd., 669 F.2d 1249, 1253 (9th Cir. 1982)). Exhaustion may be futile "where the agency's position on the question at issue appears already set, and it is very likely what the result of recourse to administrative remedies would be…." El Rescate Legal Servs., Inc. v. Executive Off. of Immigr. Review, 959 F.2d 742, 747 (9th Cir. 1991) (internal quotation marks omitted); see also Ward, 678 F.3d at 1045-46 (finding exhaustion would be futile because BOP's denial of relief was based on official BOP policy).

The BOP has a four-tiered administrative remedy process for inmates challenging issues related to their imprisonment. 28 C.F.R. §§ 542.10-542.19. First, the inmate can seek informal resolution of the issue of concern at the inmate's institution of confinement using a BP-8 form. 28 C.F.R. § 542.13. However, "An informal resolution attempt may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution." 28 C.F.R. § 542.13(b).

Second, if the informal step is unsuccessful or waived, the inmate may file a formal request with the Warden of the institution using a BP-9 form. 28 C.F.R. § 542.14. If the Warden denies a remedy, the inmate may then appeal to the Regional Director (using a BP-10 form) and then to the General Counsel in Washington, D.C. (using a BP-11 form). 28 C.F.R. § 542.15. An "[a]ppeal to the General Counsel is the final administrative appeal." 28 C.F.R. § 542.15(a). Thus, the administrative process is not complete (exhausted) until the General Counsel responds to the inmate's appeal, or if the General Counsel is does not timely respond. 28 C.F.R. § 542.18.

### III.  DISCUSSION

In the pending motion to dismiss, Respondent argues, "While forms are ordinarily obtained from the correctional counselor, they can be obtained from any institutional staff

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-09193-JGB-KES                                     Date: January 21, 2025
                                                                                                         Page 4

member. … If an inmate demonstrates an acceptable reason, the Warden or Administrative Remedy Coordinator can allow her to completely bypass the BP-8 informal stage of the process, allowing her to pursue formal resolution" by filing a BP-9 form. (Id. at 5 (citing 28 C.F.R. § 542.13(b)); see also id. (describing the BOP's "'four-tiered' administrative process").

       Respondent submitted a sworn declaration from Counselor Diaz that states, in relevant part:

> Petitioner has not requested from me, either orally or in writing, a BP-8 or BP-9 form from me relating to First Step Act credits, Good Conduct Time, or her transfer to prerelease custody pursuant to the Second Chance Act. If she had, I would have provided the form without hesitation or complaint. If Petitioner faced any difficulty in receiving one of these forms from me, she could have requested one from another member of the Unit Team or another staff member, including the Warden or another institution executive.

(Dkt. 14-3 at 4 ¶ 10.)  Respondent also submitted records from the BOP showing that Petitioner never filed any formal administrative remedies, such as a BP-9. (Dkt. 14-3 at 10 (Ex. B to Counselor Diaz's Decl.).)[3]

## IV.    CONCLUSION

       IT IS HEREBY ORDERED that, **on or before February 18, 2025**, Petitioner shall file a response to the motion to dismiss. It would be helpful to the Court if Petitioner's response would address the following factual issues:

1. How, where, and when does Petitioner allege that she requested a form from Counselor Diaz on October 23, 2024? For example, did Petitioner request the form orally or in writing? If the request was made orally, where were Petitioner and Counselor Diaz (e.g., in Petitioner's cell, in Counselor Diaz's office, in the prison library, etc.)? Did Petitioner make the request in the morning or the afternoon?

2. On October 23, 2024, does Petitioner allege that Counselor Diaz gave any reason why she was denying Petitioner a BP-8 form?

3. Did Petitioner ask Counselor Diaz for a BP-8 form on any other day?

---

[3] Counselor Diaz's declaration indicates that the BOP believes Petitioner is currently ineligible to apply FSA ETCs. (Dkt. 14-3 at 2 ¶ 4(c) ("Petitioner's projected release date is November 22, 2015, … though this date may change *if she becomes eligible to apply* [FSA ETCs] to her sentence.") (emphasis added).)  A prisoner may be ineligible to apply FSA ETCs to their sentence if they are subject to a final order of removal under immigration laws. 18 U.S.C. § 3632(d)(4)(E).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-09193-JGB-KES                                                          Date: January 21, 2025
                                                                                                                   Page 5

    4.  Has Petitioner asked any BOP staff member besides Counselor Diaz for a BP-8 form? If not, why not?

    5.  Has Petitioner asked any BOP staff member for a BP-9 form? If not, why not?

    6.  Is Petitioner subject to a final order of removal (if she knows)?

    IT IS FURTHER ORDERED that Respondent shall **not** file a reply in support of the motion unless directed to do so by the Court.

Initials of Deputy Clerk jd